### NORTHERN ALABAMA RY. CO. v. HOPKINS.

### HOPKINS v. NORTHERN ALABAMA RY. CO.

(Circuit Court of Appeals, Fifth Circuit. May 3, 1898.)

#### No. 638.

1. RECEIVERS—EXPENSES—ESTOPPEL.
   The receiver of a railroad, at the instigation of the bondholders, made several trips to Europe, in an effort to get the property out of its embarrassed financial condition. *Held*, that the bondholders were estopped to complain of the allowance of the receiver's expenses for such trips out of the proceeds of the sale of the property under a decree of foreclosure.

2. SAME.
   And the purchasers under the sale had no interest to contest the allowance of such expenses.

3. SAME.
   Traveling expenses of a receiver of a railroad, incurred in going to and from his residence to the railroad property, and elsewhere about the country, in the interests of the property, are properly allowed.

4. SAME—FINDINGS OF LOWER COURT—REVIEW.
   Unless injustice clearly appears, the findings of the lower court allowing receiver's expenses and fees will not be disturbed on appeal.

Appeal from the Circuit Court of the United States for the Northern District of Alabama.

Exceptions by J. Kennedy Tod, John G. Leiper, and the Northern Alabama Railway Company, as purchasers of the property of the Birmingham, Sheffield & Tennessee River Railroad Company at foreclosure sale, and by E. A. Hopkins, receiver of said company, to the master's report, allowing fees and expenses to said receiver. The report was modified, and the Northern Alabama Railway Company appealed, and E. A. Hopkins filed a cross appeal.

Geo. L. Rives and Girault Farrer, for Northern Alabama Ry. Co.

J. F. Martin and E. B. Kruttschnitt, for E. A. Hopkins.

Before PARDEE and McCORMICK, Circuit Judges, and SWAYNE, District Judge.

PARDEE, Circuit Judge. The Birmingham, Sheffield & Tennessee River Railroad Company, a corporation organized under the laws of Alabama, owned and operated a railroad from the town of Sheffield, Ala., to the town of Parish, on the line of the Georgia Pacific Railroad, running through some five counties in the state of Alabama. April 1, 1889, the said company executed to the Knickerbocker Trust Company, a New York corporation, a deed of trust under which $2,975,000 of bonds were issued to the Sheffield & Birmingham Construction Company, which bonds were by the last-named company afterwards hypothecated to various parties. On June 1, 1893, the railroad company having been in default in the payment of interest on the aforesaid bonds for more than a year, the Knickerbocker Trust Company filed its bill in the court a qua, asking for the appointment of a receiver, the foreclosure of the trust deed, and a sale of the mortgaged premises. The railway company answered the bill, admitting all its allegations; whereupon, on June 7, 1893, the court appointed E. A. Hopkins, a citizen of Philadelphia, receiver of all the property of the Birmingham, Sheffield & Tennessee River Railroad Company. The evidence shows that Mr. Hopkins was selected as receiver by and through the consent of the parties in interest. The receiver, having filed his bond, on June 16, 1893, took possession of the railroad, and thereafter held and operated the same, under the direction of the court, until November 30, 1895, when he turned over the property to the purchasers thereof. A decree of foreclosure and sale was entered in favor of the Knickerbocker Trust Company on July 5, 1895, by the terms of which it was ordered that the railroad should be sold by a commissioner therein appointed; that the purchasers should pay to the commissioner the sum of $50,000 in cash; that the purchasers should be entitled, in the settlement of the balance of the purchase price, to turn in or use receiver's certificates, or other valid claims against the receiver, or bonds of the railway company; that the receiver should not receive any bid for a sum less than $500,000; that the proceeds of the sale were to be applied to the payment of the expenses of the sale and the debts and liabilities incurred by the receiver in the operation of the railway property, including a reasonable allowance to the said receiver for his compensation and for his attorney, the clerk's fees, the charges of the trustee and its counsel, all such sums as might by subsequent orders in the cause be declared to be payable out of the purchase money and be prior in lien to the bonds secured by the mortgage and deed of trust, the bonds, coupons, and interest thereon secured by the first mortgage in full, or, if there be not sufficient, a pro rata amount thereon, and to the payment of the balance, if any, into court. The railroad was sold under said decree on September 16, 1895, to J. Kennedy Tod and James J. Leiper, who duly complied with the terms of sale. On October 29,

1895, the sale to Tod and Leiper was confirmed, and a deed ordered, and in the decree to that effect the following provision is found:

"And that the said purchasers, J. Kennedy Tod and James J. Leiper, and their heirs and assigns, be, and they are hereby, allowed to appear, either in person or by attorney, before the said special master, and also before the court, in any and all proceedings wherein and whereby any claim against said Birmingham, Sheffield & Tennessee River Railroad Company, or the receiver of said company, is sought to be declared to be payable out of the said purchase money, or to be prior in lien to the mortgage bonds of said railroad company; and the said purchasers, and their heirs and assigns, shall have the right to appeal from all decrees in such cases to the same extent as the original parties to the said suit."

On January 9, 1896, the receiver presented his final report, accompanied by a statement of his personal expenses, and a petition asking for compensation, and the appointment of a master to determine the amount thereof. Upon this petition, a decree of reference was entered the same day containing the following provision:

"It is further ordered and decreed that the said master shall be empowered to hear the testimony of such witnesses as the petitioner and said parties may cause to be brought before him, and such other testimony as may be legally admissible in such cases, and from such testimony to find, fix, and determine the amount of the said receiver Edmund A. Hopkins' compensation, and that he report the amount of his findings to this court by the 27th day of April, 1896."

After taking much evidence, the master filed an elaborate report, recommending that the receiver be allowed for compensation as receiver the sum of $20,000; for personal expenses,—trips to Europe $3,150, and for other personal expenses $3,022.50,—making a total of $26,172.50, subject to a credit of $6,127.82. To this report exceptions were filed by J. Kennedy Tod and John G. Leiper and the Northern Alabama Railway Company, as purchasers of the railway property at the foreclosure sale. The grounds of the exceptions were that personal expenses should not have been allowed at all, because no itemized accounts were presented, nor vouchers produced, nor were said expenditures necessary; and that the compensation of $20,000 is excessive, and not warranted by the testimony. Hopkins, the receiver, also filed exceptions to the report, claiming that the sum allowed him as compensation was inadequate and not reasonable. The exceptions to the master's report were heard before the court, all parties being represented by counsel; whereupon the court, being of opinion that the $20,000 allowed the receiver for compensation was excessive, and that the sum of $5,000 per year would be a just and reasonable compensation, maintained the exceptions filed by the purchasers to that extent, but otherwise overruled all exceptions, and entered a decree accordingly. From this last decree the Northern Alabama Railway Company, as purchaser, appealed, assigning as error the allowance by the special master and the court of the personal expenses claimed by the receiver. Only the Northern Alabama Railway Company and E. A. Hopkins were made parties. Hopkins entered a cross appeal against the Northern Alabama Railway Company solely, assigning as error that the court erred in overruling the receiver's exceptions, and reducing the amount of compensation as allowed by the special master.

The evidence shows that the master reports that the expenses of the receiver in his several trips to Europe were incurred while the receiver was visiting Europe in the interest and at the instigation of the bondholders, and with the consent of the stockholders of the railway company, to try and bring about a reorganization which would get the property out of its then embarrassed financial condition, and complete the railroad in accordance with its original design; and that it was then believed by all the parties that the receiver, because of his knowledge of the subject, would be the best person who could be selected to present the plans to those who were already interested in the property as well as to those from whom it was hoped additional capital could be obtained.

Without seriously denying this evidence, the appellant contends that the business was entirely outside of the receiver's duties under the order of the court, which, it is claimed, were limited to managing and operating the railroad, keeping it open as a public highway, and to collecting money due to the company; and that, as the endeavors to successfully reorganize the property were fruitless, the expense cannot be allowed, particularly as against Tod and Leiper and the Northern Alabama Railway Company, purchasers of the property. On the other hand, it is contended that Leiper and Tod were really a purchasing committee, representing all the bondholders, and that, as the expenses were incurred in the interest of and with the consent of the bondholders, they cannot be allowed to object to the expense; and it is further contended that it was proper for the receiver to act in conjunction with, and in the interest of, all the bondholders, to endeavor to bring about a reorganization of the property. As to these expenses the special master reports as follows:

"It further appears from the testimony given and the papers filed in this matter that, while this suit was in progress, several plans were set on foot, or attempted to be set on foot, between Messrs. J. Kennedy Tod and John G. Leiper, representing the bondholders, and the receiver, and with the consent of the stockholders of the railroad, to get the property out of its then condition, and complete it, in accordance with its original design, into Birmingham, and extending it to Riverton; and that it was then believed that, because of his knowledge of the subject, the receiver in this cause would be the best person who could be selected to present the plans to those who were already interested in the property, as well as to those from whom it was hoped the necessary additional capital could be obtained; and that, pursuant to that understanding, Mr. Hopkins made three trips to Europe, as testified to by him, and which were fully known by Messrs. Tod and Leiper. It cannot be believed that it was understood by those parties that Hopkins was making these trips, or 'excursions,' as counsel for the railway company term them, with the intention or expectation of paying his own expenses. He had no interest in the property, either as bondholder or stockholder, and, although he admits an interest in the property by reason of the stock in the railroad company belonging to his friends, it could hardly be supposed that his friendship would be carried to the extent of his paying out $3,150, when the property involved was first called upon to pay off the claim of the bondholders, amounting to about $1,700,000, together with all prior claims and the costs of this litigation, before anything could possibly be realized upon the stock in the railroad. It might be argued that there may have been some other plan understood between Mr. Hopkins and these representatives of the bondholders looking to his compensation in this regard, and a repayment of his expenses, but if such a plan existed it might well be presumed they would have made it known on the hearing. Nor can I find, after careful perusal of the

plans of reorganization filed as part of the testimony in this cause, any provision by which any compensation for payment of expenses is made to Hopkins. Of course, the distinction must be kept in mind that, even if it had been agreed between the parties to the litigation that provision should be made by the court to pay the receiver's expenses of this character, and that, without notice of such a claim, third persons should have bought the property under the decree rendered in this suit, it might be doubted if the court would impose these expenses as a prior claim under its decree; but in this case the purchasers of the property were the same parties with whom all prior transactions had been had, and they had acted with the receiver in his efforts to put the property on its feet, and they would have been the beneficiaries had his and their efforts been successful. It seems that it would be just and equitable that the amount shown to have been expended on these trips, about which there was no contention, should be allowed. It is shown that the Northern Alabama Railroad Company simply stands in the 'shoes' of Messrs. J. Kennedy Tod and John G. Leiper, the purchasers of the railway property, who themselves represented the bondholders of the Birmingham, Sheffield & Tennessee River Railway Company, and that they assigned their bid to said Northern Alabama Railway Company, which is a new corporation, organized for the purpose of operating the purchased property."

The view we take is that, under the circumstances reported by the special master, the bondholders are estopped to deny the propriety of the expenses incurred by the receiver at their own instance and for their own benefit, and that the purchasers of the railway property under the decree of foreclosure and sale, as such, have no interest to contest the expenses of the receiver. The other expenses of the receiver which are contested appear to have been incurred by the receiver in traveling to and from his residence to the railway property and elsewhere about the country, in the interest of the railway property in his custody. As the evidence shows that such traveling was necessary in looking after the involved interests of the railway property in his charge, we are of opinion that they were properly allowed, and we take this view the more readily because, generally, in such cases, the expenses allowed receivers of railway property are so identified with the matter of compensation as to ordinarily affect, if not control, the allowance made by the court. The receiver's compensation, as fixed by the circuit court, appears to be reasonable, under the evidence. Certainly, it cannot be held excessive on appeal, for we cannot say that it was unjust, insufficient, or unreasonable.

We had occasion to declare the rule in matters of this kind in Gaines' Adm'r v. Mills' Ex'rs, 13 U. S. App. 229, 235, 4 C. C. A. 521, 525, and 54 Fed. 614, 617:

"Appellate courts are generally not disposed to disturb the findings of the lower courts in the matter of compensation for services of trustees, solicitors, receivers, and masters rendered in the conduct of litigation in said courts, whether based on findings of masters or verdicts of juries, unless injustice clearly appears, for the reason that the court below should have considerable latitude of discretion on the subject, since it has far better means of knowing what is just and reasonable than an appellate court can have. See Trustees v. Greenough, 105 U. S. 527, 537; Cowdrey v. Railroad Co., 1 Woods, 331, 341, Fed. Cas. No. 3,293; and Head v. Hargrave, 105 U. S. 45."

We have been furnished with no authority to justify us in departing from the rule above declared. We do not find it necessary to pass upon the question, much argued in the briefs, whether it is

proper to permit a receiver of the court to participate in schemes of reorganization. Nor do we decide that the appellant has on the record an interest sufficient to warrant his appeal (but see Central Trust Co. v. Grant Locomotive Works, 135 U. S. 207, 222, 10 Sup. Ct. 736), nor that either the appeal or cross appeal was properly taken. The decree of the circuit court is affirmed.